

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

970 Broad Street, Suite 700                   973/645-2708

Newark, NJ 07102


November 11, 2009

Honorable Joseph A. Greenaway, Jr.
United States District Judge
United States Post Office & Courthouse
Federal Square
Newark, New Jersey 07102


      Re:   United States v. Michael Brassington
            <u>Criminal No. 09-45 (JAG)</u>

Dear Judge Greenaway:

    Please accept this letter-brief in lieu of a more formal submission in opposition to defendant Michael Brassington's motion to dismiss Counts Two and Three of the Indictment on the grounds that these charges violate the federal doctrines of res judicata and collateral estoppel. The application should be denied.

<u>**Facts & Procedural History**</u>

**I.    The Crash & Investigation**

    On February 2, 2005, a Bombardier Challenger jet bearing tail number N370V ("Jet N370V") crashed upon takeoff at Teterboro Airport in Teterboro, New Jersey. As Jet N370V sped down the runway, it failed to lift off, or "rotate." The jet ran off the end of the runway, smashed through a fence, crossed an intersection of Route 46, struck a vehicle with passengers, and crashed into a clothing warehouse. This crash severely and permanently injured a number of people, including a pair of New Jersey commuters sitting in the struck car on Route 46, and caused roughly $30 million dollars in damage.

    The crash flight was a chartered trip operated by

defendant's company, Platinum Jet Management, which was a luxury charter airline service based in Fort Lauderdale, Florida. The Department of Transportation, Office of the Inspector General ("DOT-OIG"); Federal Aviation Administration ("FAA"); National Transportation Safety Board ("NTSB"), and other agencies immediately commenced an investigation of the causes of the crash and the conduct of Platinum Jet and its operators and pilots.

## II.   The Administrative Proceedings

The federal investigation revealed a number of regulatory violations committed by defendant and Platinum Jet. On August 3, 2005, the FAA, pursuant to its emergency authority under 49 U.S.C. § 46105(c), issued an emergency order of revocation against defendant, thereby revoking his pilot's license, also known as an airline transport pilot ("ATP") certificate.

The order alleged a variety of regulatory violations, including the intentional falsification of two flight logs for a pair of charter trips on November 1, 2004 and December 13, 2004, contrary to 14 C.F.R. § 61.59(a)(2), which provides remedial penalties, such as suspension or revocation of a pilot's license, for falsifying flight records. Specifically, it was alleged that defendant intentionally signed false flight logs for these two charter flights indicating that these were private, or "Part 91," flights, instead of commercial, or "Part 135," flights, as they actually were.

On August 30, 2005, in Miami, Florida, an NTSB administrative law judge ("ALJ") heard defendant's appeal of the FAA's revocation. Defendant testified at that hearing, as did two of his co-defendants in this matter, Francis Vieira and Brian McKenzie.

At the conclusion of the hearing, on August 31, 2005, the ALJ overturned the revocation, finding that the FAA had not carried its burden of proving that defendant intended to falsify the two flight logs.[1] In so ruling, the ALJ relied heavily on defendant's testimony. (See Def.'s Br., Ex. 2, at 344:23-346:16.)

---

[1] Because defendant had admitted to a series of other violations not at issue here, however, the ALJ suspended defendant's ATP certificate for 30 days.

On October 5, 2005, the NTSB denied the FAA's appeal and affirmed the ALJ's decision.

### III. The Criminal Proceedings

In the years following the FAA's unsuccessful attempt to ground defendant permanently, DOT-OIG and a federal grand jury continued the investigation of Platinum Jet, ultimately uncovering a three-year scheme to deceive the FAA, NTSB, charter brokers, and paying passengers. Specifically, it was discovered that Platinum Jet had flown more than 100 charter flights from November of 2002 through November of 2003 without a commercial, or "Part 135," certificate; that once Platinum Jet did acquire access to another company's Part 135 certificate, it falsified dozens of FAA-required documents to conceal a variety of safety violations, such as rest and competency requirements for pilots; and that Platinum Jet had over-fueled, or "tankered," its aircraft with cheap jet fuel and falsified FAA-required weight-and-balance documents to hide the resulting dangerous weight configurations on commercial flights.

On January 23, 2009, a federal grand jury handed up a twenty-three-count Indictment, Criminal No. 09-45 (JAG), against defendant and five conspirators. The Indictment charges in Count One that defendant joined a conspiracy, the object of which was for the conspirators to enrich themselves by repeatedly violating airline safety and regulatory requirements while operating Platinum Jet as an on-demand commercial jet charter company, in violation of 18 U.S.C. § 371. The Indictment also charges defendant with endangering the safety of an aircraft in violation of 18 U.S.C. § 32. Among the many additional substantive crimes with which defendant is charged are two false statement charges alleged in Counts Two and Three of the Indictment. Specifically, these two Counts charge defendant with falsifying a pair of FAA-required flight logs, in violation of 18 U.S.C. § 1001, in relation to the same two flights at issue in the FAA administrative proceedings.

### Law & Argument

Defendant argues that Counts Two and Three "should be dismissed because they violate the federal doctrine of res judicata, specifically the issue preclusion bar to an action previously litigated." (Def.'s Br. at 1.) According to defendant, because Counts Two and Three of the Indictment allege substantially the same conduct alleged by the FAA in its

revocation proceedings, his success at those administrative proceedings precludes subsequent prosecution for that same conduct in a criminal case. (Id.) Defendant's argument should be rejected.

**I.   Res Judicata (Claim Preclusion)**

The doctrine of res judicata, also known as claim preclusion, "applies to repetitious suits involving the same cause of action." Comm'r v. Sunnen, 333 U.S. 591, 597 (1948). The doctrine holds that,

> when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

Id. (quotes and citation omitted).

In the criminal context, "a civil action may preclude a later criminal prosecution, but only if both actions are based on the same facts and both have punishment as their object." United States v. Brekke, 97 F.3d 1043, 1047 (8th Cir. 1996) (emphasis added); see also United States v. Bertucci, 333 F.2d 292, 299 (3d Cir. 1964); United States v. Mumford, 630 F.2d 1023, 1027-28 (4th Cir. 1980).

Here, the two proceedings at issue, namely, the FAA's administrative proceedings to revoke defendant's pilot's license in August of 2005, and the current criminal proceedings against defendant before this Court, clearly represent different causes of action. A criminal proceeding, if resolved against a defendant, involves a punitive outcome, i.e., a term of imprisonment and a fine. By contrast, an FAA administrative proceeding for revocation of a pilot's ATP certificate is remedial; punishment is not its object. E.g., Coghlan v. NTSB, 470 F.3d 1300, 1305 (11th Cir. 2006); Hite v. NTSB, 991 F.2d 17, 20 (9th Cir. 1993); Specht v. Civil Aeronautics Bd., 254 F.2d 905, 917 (8th Cir. 1958) ("[T]he primary effect of . . . revocation [of an ATP certificate] is remedial, in that a pilot not qualified to command an airline transport aircraft has been denied the authority to do so."). Consequently, there is no res judicata bar to the criminal accusations embodied in Counts Two and Three of the Indictment.

**II. Collateral Estoppel (Issue Preclusion)**

The doctrine of collateral estoppel, also known as issue preclusion, provides that, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action that involves a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979).[2] The purpose of the doctrine, together with lessening the burden of parties faced with relitigating the same issues against the same adversary, is the promotion of judicial economy by preventing needless lawsuits. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).

Collateral estoppel can apply in criminal cases, even when the previous cases were civil in nature. Yates v. United States, 354 U.S. 298, 335 (1957) (overruled on other grounds). Nevertheless, "the important federal interest in the enforcement of criminal law suggests that collateral estoppel effects from noncriminal to criminal proceedings should be recognized only sparingly." United States v. Alexander, 743 F.2d 472, 476 (7th Cir. 1984) (citing Standefer v. United States, 447 U.S. 10, 24 (1980) (quotes omitted)). "[A] criminal case involves competing policy considerations that outweigh the economy concerns that undergird the estoppel doctrine." Standefer, 447 U.S. at 25.

The Seventh Circuit's Alexander case involved circumstances quite similar to those here. There, the defendant, a repairman and salesman of heavy duty truck scales, developed a pattern of enticing customers by offering low prices for scales and repairs. See Alexander, 743 F.2d at 474. He would then demand large down payments from the customer but never deliver the scales or perform the repairs. See id. The United States Postal Service filed an administrative complaint against the defendant's company seeking to enjoin him from receiving any mail connected to his scheme, but an administrative law judge denied the requested relief. Id. at 473. When he was indicted for mail fraud on the basis of many of the same mailings at issue in the administrative

---

[2]As a general matter, the doctrine applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." Szehinskyj v. Att'y Gen. of the United States, 432 F.3d 253, 255 (3d Cir. 2005) (quotes and citations omitted).

hearing, the defendant contended that the Postal Service's unsuccessful action against him barred the United States Attorney from relitigating the claims of fraud in a criminal case. Id.

The Seventh Circuit upheld the trial court's rejection of the defendant's collateral estoppel argument. After discussing the law of Standefer and its deference to the public's interest in the enforcement of criminal law, the court stated the following with respect to application of the doctrine in the context of criminal proceedings which follow administrative proceedings:

> [C]ollateral estoppel in this context would affect seriously the executive branch decisions to enforce regulatory schemes. If an administrative decision against the Government precluded subsequent prosecutions, the Government might hesitate to bring enforcement proceedings at all. . . . If we were to endow initial administrative decisions with preclusive effects on criminal actions, the Government would either have to postpone the administrative action until it obtained a favorable result in the corresponding criminal case or have to allocate substantially greater resources to the enforcement of regulations to increase the likelihood of a favorable outcome at the administrative level. We refuse to impose such a burden upon the Government's decisions as to the allocation of limited resources.

Id. at 477.

Applying these principles to the instant matter, it is clear that defendant's collateral estoppel argument fails. If the Postal Service's interest in enjoining a fraudster's use of the mails is compelling enough to outweigh the judicial economy concerns of the collateral estoppel doctrine and preclude a bar to a subsequent criminal action, as it was in Alexander, then surely the FAA's interest in protecting the human life and property at stake in the commercial airline industry must also trump the doctrine's less pressing concerns. The FAA must be able to act immediately to eliminate risks to public safety. Unlike other federal agencies, the FAA does not have the luxury of "postpon[ing] the administrative action until it obtain[s] a favorable result in the corresponding criminal case." Alexander, 743 F.2d at 474.

Here, the FAA quickly and rightly opted to revoke defendant's flying privileges. Indeed, defendant's company was

<u>still</u> violating FAA regulations <u>after</u> its criminal behavior caused a $30 million plane crash and permanently disabled several human beings. (<u>See</u> Indictment, Ct. 1 ¶ 12(m).) To give preclusive effect to the FAA's unsuccessful attempt to keep defendant out of U.S. airspace would clearly undermine the FAA's efforts to keep air travelers safe. <u>See</u> <u>Alexander</u>, 743 F.2d at 477.

And putting aside the compelling regulatory issues in play here, if the collateral estoppel doctrine is to be used "only sparingly" in criminal cases owing to the strong public interest in criminal law enforcement, <u>id.</u> at 476, it is plain that the instant matter is <u>not</u> the test case for the doctrine's use. As the Third Circuit reasoned in the <u>Standefer</u> case, using language quoted approvingly and in full by the Supreme Court on review, 447 U.S. at 25:

> [T]he purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather it is to vindicate the public interest in the enforcement of the criminal law while at the same time safeguarding the rights of the individual defendant. <u>The public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil cases and we are thus inclined to reject, at least as a general matter, a rule that would spread the effect of an erroneous acquittal to all those who participated in a particular criminal transaction</u>. To plead crowded dockets as an excuse for not trying criminal defendants is in our view neither in the best interest of the courts, nor the public.

<u>Standefer v. United States</u>, 610 F.2d 1076, 1093 (3d Cir. 1979) (emphasis added), <u>aff'd</u> 447 U.S. 10 (1980).

The public's interest "in the accuracy and justice of criminal results" is particularly strong here, where defendant and his conspirators displayed breathtaking recklessness during their three-year scheme to over-fuel their aircraft with cheap jet fuel and conceal a variety of other safety violations – all for money – which culminated in a fiery plane crash just over a public highway in Teterboro. (<u>See</u> Indictment, Ct. 1 ¶¶ 10-12, Ct. 20.) In light of defendant's conduct, it would be perverse to give preclusive effect to his triumph before the FAA in reliance on the comparatively abstract principle of judicial economy.

This is especially so considering that the collateral estoppel doctrine "is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct." Standefer, 447 U.S. at 23 n.18. The government's proofs at defendant's criminal trial will demonstrate that defendant obtained a favorable result at his FAA pilot's license revocation hearing almost entirely on the basis of perjured testimony, most notably his own. Cf. United States v. Rogers, 960 F.2d 1501, 1509 (10th Cir. 1992) (applying issue preclusion in criminal action following civil action, but reasoning that, unlike in the instant case, "all references to the perjured testimony cited by the government reveal[ed] perjured testimony that did not significantly affect the outcome of the [civil] trial").

Indeed, the existence of the conspiracy charged in Count One, a charge which includes the falsified flight logs at issue in this motion, has already been established. As the Court is aware, two of defendant's fellow conspirators, Andre Budhan and Joseph Singh, have already pled guilty to Count One. This demonstrates with considerable reliability that defendant's false flight logs were not merely an oversight, as he testified at his FAA hearing (see Def.'s Br., Ex. 2, at 271:22-278:18), but an integral part of the overall conspiracy. That defendant's success at the administrative hearing will be proven a miscarriage of justice at his criminal trial is further reason to reject application of the collateral estoppel doctrine in this matter.

### **Conclusion**

The FAA's revocation hearing in August of 2005 and the federal Indictment handed up in January of 2009 represent two different causes of action; the former was remedial in nature, while the latter is punitive in nature. Accordingly, no res judicata bar applies in the instant proceeding. See, e.g., United States v. Bertucci, 333 F.2d 292, 299 (3d Cir. 1964).

Additionally, giving preclusive effect to an erroneous administrative ruling would frustrate the public's dual interests in, first, efficient FAA enforcement of airline safety regulations, and second, just and effective enforcement of the criminal law. These interests are more important than the economy interest undergirding the collateral estoppel doctrine. See, e.g., Standefer v. United States, 447 U.S. 10, 24-25 (1980). Accordingly, no collateral estoppel bar applies in the instant proceeding.

     For these reasons, defendant's motion to dismiss Counts Two and Three of the Indictment on the grounds that these charges violate the federal doctrines of res judicata and collateral estoppel should be denied.

                                     Respectfully submitted,

                                     PAUL J. FISHMAN
                                   United States Attorney

                                   <u>/s/ Scott B. McBride</u>
                                   By: SCOTT B. MCBRIDE
                                   Assistant U.S. Attorney

cc:  Michael Salnick, Esq.