2005R00966/SBM

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 09-45 (JAG) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL BRASSINGTON, | : | |
| PAUL BRASSINGTON, | : | 18 U.S.C. § 371 |
| BRIAN McKENZIE, | : | 18 U.S.C. § 1001 |
| FRANCIS VIEIRA, and | : | 18 U.S.C. § 32 |
| JOHN KIMBERLING | : | 18 U.S.C. § 2 |

### S U P E R S E D I N G
### I N D I C T M E N T

The Grand Jury in and for the District of New Jersey,

sitting at Newark, charges:

### COUNT ONE
### (Conspiracy)

1.   At various times relevant to this Indictment:

**Platinum Jet Management, LLC**

a.   Platinum Jet Management, LLC ("Platinum Jet"),

with its principal place of operations in Fort Lauderdale,

Florida, was a private, luxury charter airline service engaged in

the business of operating, maintaining, and managing aircraft,

including Canadair CL-600 jet planes.  Platinum Jet used these

and other aircraft to provide on-demand domestic and

international air charter services to charter brokers and

individual customers paying as much as approximately $90,000 per

charter.

**The Defendants**

    b. Defendant MICHAEL BRASSINGTON co-founded Platinum Jet in or about August 2002 and was the President, Chief Executive Officer, and Chief Line Pilot of Platinum Jet. Defendant MICHAEL BRASSINGTON oversaw all flight operations, hired pilots, and solicited business for Platinum Jet.  Defendant MICHAEL BRASSINGTON also flew charter flight passengers as a Captain, or Pilot-in-Command, for Platinum Jet.  In addition, defendant MICHAEL BRASSINGTON was primarily responsible both for maintaining accurate FAA-required records on behalf of Platinum Jet for those charter flights and for the safety of passengers onboard those charter flights.

    c. Defendant PAUL BRASSINGTON co-founded Platinum Jet with his brother, defendant MICHAEL BRASSINGTON, and others. Defendant PAUL BRASSINGTON was a Vice President of Platinum Jet and solicited business, booked charter flights, and dispatched flights for Platinum Jet.

    d. Defendant BRIAN McKENZIE was the Director of Maintenance for Platinum Jet who supervised a team of aircraft inspectors and mechanics employed by or under contract with Platinum Jet and was primarily responsible for all maintenance operations of the company to ensure that its aircraft were safe to fly.

    e. Defendant FRANCIS VIEIRA was a pilot having the rank of First Officer, or Second-in-Command, for Platinum

Jet.  Defendant FRANCIS VIEIRA flew numerous charter flights for Platinum Jet, prepared FAA-required documents for those flights, and was responsible for the safety of passengers onboard those flights.

          f.  Defendant JOHN KIMBERLING was a pilot having the rank of Captain, or Pilot-in-Command, for Platinum Jet. Defendant JOHN KIMBERLING flew numerous charter flights for Platinum Jet and was primarily responsible both for maintaining accurate FAA-required records on behalf of Platinum Jet for those flights and for the safety of passengers onboard those flights.

## Other Actors

          g.  Andre Budhan, a co-conspirator who is not charged as a defendant herein, co-founded Platinum Jet and was a managing member of Platinum Jet.  Andre Budhan solicited business for Platinum Jet, controlled Platinum Jet's finances, and was responsible for paying pilots and other employees.

          h.  Joseph Singh, a co-conspirator who is not charged as a defendant herein, was the Director of Charters for Platinum Jet.  Joseph Singh solicited business for Platinum Jet, and also booked and dispatched flights for Platinum Jet.

          i.  Darby Aviation, d/b/a Alphajet International, Inc. ("Darby Aviation"), was a charter airline service company located in Muscle Shoals, Alabama.

- 3 -

**The Aircraft**

j.   Canadair CL-600-1A11, Serial Number 1014, bearing tail number N370V ("Jet N370V"), was a Bombardier Challenger 600 Series business jet leased and operated by Platinum Jet.  Platinum Jet commenced operating Jet N370V on or about August 8, 2003.

k.   Canadair CL-600-1A11, Serial Number 1030, bearing tail number N60S ("Jet N60S"), was a Bombardier Challenger 600 Series business jet leased and operated by Platinum Jet.  Platinum Jet commenced operating Jet N60S in or before November 2002.

l.   Canadair CL-600-1A11, Serial Number 1022, bearing tail number N260V ("Jet N260V"), was a Bombardier Challenger 600 Series business jet leased and operated by Platinum Jet.  Platinum Jet commenced operating Jet N260V in or before August 2003.

2.   At all times relevant to this Indictment:

**The Federal Aviation Administration**

a.   The FAA was part of the United States Department of Transportation.  The responsibilities of the FAA included regulating the safety and airworthiness of all aircraft in the United States, including those operated for charter flights, as well as the conduct of those persons operating aircraft.

b.    The FAA issued regulations known as the Federal Aviation Regulations ("FAR"), which governed all civilian aviation activities within the United States.  The FAR were designed to ensure safe aviation activities within the United States.

**Private and Non-Commercial "Part 91" Flights**

c.    Part 91 of the FAR ("Part 91") provided the threshold or baseline operating and flight rules governing the operation of all aircraft within the United States.  "Part 91 flights" were private and non-commercial flights; that is, Part 91 operators were not permitted to charter aircraft for compensation or hire.  Part 91 operations typically involved the owner of an aircraft flying family, friends, and business associates, or leasing the aircraft to others for similar private purposes.

(i)    Section 91.7(a) of Part 91 expressly prohibited the operation of a civil aircraft unless it was "in an airworthy condition."

(ii)    Section 91.13(a) of Part 91 expressly prohibited operation of "an aircraft in a careless or reckless manner so as to endanger the life or property of another."

On-Demand and Commercial "Part 135" Flights

        d.   Part 135 of the FAR ("Part 135") provided additional operating and safety requirements for on-demand commercial operations.  "Part 135 flights" were commercial flights operated for compensation or hire.  Part 135 operators held themselves out to the public, frequently through charter brokers, to those willing to pay for charter jet flights.

        e.   Because Part 135 operations involved many more flights with a greater number of passengers, and thus entailed substantially more risk to passenger safety and property than Part 91 operations, Part 135's additional rules were more strict than Part 91's baseline rules.

        f.   Part 135 operators were required to obtain an operating certificate, also known as a "Part 135 certificate," authorizing them to operate in the United States as on-demand air charter operations.  The FAA issued Part 135 certificates to operators only after a rigorous application process, which required operators, among other things, to develop comprehensive operating, training, and maintenance manuals that would govern their charter operations.

        g.   Part 135 operations were also subject to stringent record-keeping, maintenance, training, and safety requirements, including the following:

        (i)   Part 135 certificate holders had to prepare before each flight on a multi-engine aircraft a "load

manifest," which was a document that recorded information about each flight, such as the number of passengers and the origin and destination of the flight.  Copies of the load manifest were required to be maintained and made available for FAA inspection for a period of at least thirty days.

(ii)  Pilots were subject to flight time limitations, including rest time requirements before scheduled flights, and had to pass periodic knowledge, competency, and proficiency tests.

**Platinum Jet's and Darby Aviation's Part 135 Arrangement**

h.  Platinum Jet did not hold a Part 135 certificate.  Darby Aviation did hold a Part 135 certificate.

i.  On or about November 17, 2003, Platinum Jet entered into a "piggybacking" or "certificate sharing" agreement with Darby Aviation.  This piggybacking arrangement was to enable Platinum Jet to operate commercial charter flights under Darby Aviation's Part 135 certificate.

3.  At all times relevant to this Indictment:

**Relevant Aviation Terms**

a.  **Airworthiness**

(i)  Airworthiness was a term used to define whether an aircraft was safe for flight according to FAA standards.

(ii)  The weight of the aircraft and the configuration of that weight were important factors in

determining whether the aircraft was safe for flight and thus airworthy.

b.   **Basic Operating Weight (BOW)**

(i)   The BOW of an aircraft was the total weight of the aircraft when it was ready to fly, excluding passengers, baggage, and fuel.   The BOW was a fixed number and did not change unless and until the aircraft was re-weighed.

(ii)   The BOW of Jet N370V, while it was under Platinum Jet's control, was approximately 25,650 pounds, according to a weight-and-balance report dated on or about September 12, 2001 that was stored on Jet N370V (the "Jet N370V Weight-and-Balance Report"), as required by federal law.

(iii)   The BOW of Jet N60S, while it was under Platinum Jet's control, was approximately 25,640 pounds, according to a weight-and-balance report that was stored on Jet N60S, as required by federal law.

c.   **Center of Gravity (COG)**

(i)   The COG of an aircraft was the point at which the aircraft would balance if it were suspended.

(ii)   The COG limits of an aircraft were established by the aircraft manufacturer through tests using different weight configurations.   These COG limits were typically known as the forward and aft boundaries, and the left and right boundaries, within which an aircraft's center of gravity had to

be located during takeoff, flight, and landing for safety
purposes.

        (iii)   When an aircraft's COG was located
outside of its limits, the aircraft could become difficult or
impossible to control.  If the weight of an aircraft was
configured in a way that caused the aircraft's COG to exceed its
forward limit as a result of excess front-loaded fuel,
passengers, or baggage, the aircraft could have difficulty taking
off or sustaining flight.

        d.   **Load Manifest**

        (i)   A load manifest was an FAA-required
document for Part 135 operators that recorded information about
each flight, including the number of passengers, the total weight
of the loaded aircraft, the maximum allowable takeoff weight and
COG limits for that flight, the COG of the loaded aircraft, the
registration number of the aircraft, the origin and destination
of the flight, as well as the identification of crew members and
their crew assignments.

        (ii) When Platinum Jet commenced piggybacking
on Darby Aviation's Part 135 certificate, Platinum Jet recorded
the required load manifest information on "flight logs," which
contained information about the flight's crew, passengers,
origin, and destination, and on "weight-and-balance" graphs,
which were used to calculate the weight and COG of the loaded
aircraft.

- 9 -

(iii)   The weight-and-balance graphs had a pre-printed BOW to use as a starting point for the weight-and-balance calculation.  This pre-printed BOW was based on the most recent weighing of the aircraft.  Platinum Jet's aircraft were supposed to be re-weighed every three years, pursuant to Darby Aviation's operations manual and Part 135.

(iv)   Darby Aviation required Platinum Jet to send via facsimile or mail Platinum Jet's flight logs and weight-and-balance graphs to Darby Aviation's offices in Muscle Shoals, Alabama, where these records were maintained for FAA inspection in accordance with Part 135.

(v)   Before each flight, the captain or first officer was required to verify, through the use of a weight-and-balance graph, that the weight and COG of the aircraft were within their limits.

## The Conspiracy

4.   From at least as early as in or about November 2002 through in or about March 2005, in the District of New Jersey and elsewhere, defendants

MICHAEL BRASSINGTON,
PAUL BRASSINGTON,
BRIAN McKENZIE,
FRANCIS VIEIRA, and
JOHN KIMBERLING

did knowingly and intentionally conspire and agree with one another and others:

a.   to commit an offense against the United States, that is, to devise a scheme and artifice to defraud charter flight customers, jet charter brokers, the FAA, and others, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises concerning Platinum Jet's compliance with the FAA's safety and other regulations relating to the operation of commercial aircraft in the United States, as set forth below, and to use interstate wire communications for the purpose of executing their scheme and artifice, contrary to Title 18, United States Code, Section 1343; and

b.   to defraud the United States by impeding, impairing, obstructing, and defeating the lawful governmental functions of the FAA to regulate the operation of commercial aircraft in the United States.

## Object of the Conspiracy

5.   The object of the conspiracy was for the conspirators to enrich themselves by repeatedly violating airline safety and regulatory requirements while operating Platinum Jet as an on-demand commercial jet charter company.

## Manner and Means of the Conspiracy

### *Concealment of Part 135 Violations Concerning Aircraft Safety*

6.   It was a part of the conspiracy that, between in or about November 2002 and in or about November 2003, despite not having a Part 135 certificate, defendants MICHAEL BRASSINGTON, PAUL BRASSINGTON, BRIAN McKENZIE, FRANCIS VIEIRA, and others would:

a.   solicit charter flight customers for Platinum Jet using jet charter brokers;

b.   misrepresent to those charter flight customers and jet charter brokers in documents sent via facsimile, and by other means, that Platinum Jet operated in compliance with the FAR's safety standards; and

c.   fly in excess of 85 commercial charter flights without a Part 135 certificate in exchange for more than $1 million in compensation.

7.   It was a further part of the conspiracy that, beginning in or about November 2003, after Platinum Jet commenced piggybacking on Darby Aviation's Part 135 certificate, defendants MICHAEL BRASSINGTON, PAUL BRASSINGTON, BRIAN McKENZIE, FRANCIS

- 12 -

VIEIRA, JOHN KIMBERLING, and others would continue to operate
Platinum Jet in violation of Part 135's safety requirements by:

        a.   contracting with unqualified pilots who had
not received FAA-required training and who failed to meet Part
135's knowledge, competency, and proficiency testing
requirements;

        b.   contracting with pilots who did not have the
Part 135-required rest time prior to scheduled flights; and

        c.   flying in excess of 30 commercial charter
flights in violation of these Part 135 safety rules.

    8.   It was a further part of the conspiracy that
defendants MICHAEL BRASSINGTON, FRANCIS VIEIRA, JOHN KIMBERLING,
and other Platinum Jet pilots would conceal the regulatory
violations described in paragraph 7 by falsely indicating on
flight logs, which were sent via facsimile across state lines
from New Jersey and elsewhere to Darby Aviation in Alabama, that
commercial charter flights were private Part 91 flights.

    9.   It was a further part of the conspiracy that
defendants MICHAEL BRASSINGTON, PAUL BRASSINGTON, and others, in
exchange for compensation, would deceive charter flight brokers
and customers by, among other things, signing and sending via
facsimile across state lines a "terms and conditions" contract
which falsely represented that Platinum Jet was in compliance
with Part 135's federal safety regulations.

## Concealment of Dangerous Fuel "Tankering"

10.   It was a further part of the conspiracy that
defendant MICHAEL BRASSINGTON would instruct Platinum Jet's
pilots to maximize charter profits by "tankering" fuel, that is,
loading extra fuel on the aircraft at locations where Platinum
Jet had fueling contracts for comparatively cheap fuel prices,
including Teterboro Airport in New Jersey, even when such
tankering caused the aircraft to exceed their maximum allowable
takeoff and landing weights and forward COG limits, thereby
endangering the safety of the aircraft during takeoff, flight,
and landing.

11.   It was a further part of the conspiracy that
defendants MICHAEL BRASSINGTON, FRANCIS VIEIRA, and others would:

a.   falsify weight-and-balance graphs by manually
changing the starting point on those graphs to a different BOW
and COG, in order to make it appear as if the aircraft were
within weight-and-balance limits when in fact they were not;

b.   instruct certain of Platinum Jet's pilots to
falsify weight-and-balance graphs in a similar fashion;

c.   cause these falsified weight-and-balance
graphs to be sent via facsimile from New Jersey and elsewhere to
Darby Aviation in Alabama; and

d.   fly or cause other Platinum Jet pilots to fly
in excess of 25 commercial charter flights on Jet N370V and Jet

N60S with COGs that exceeded the forward limits of those
aircraft.

### Overt Acts

12.   In furtherance of the conspiracy and to effect its
unlawful objects, defendants MICHAEL BRASSINGTON, PAUL
BRASSINGTON, BRIAN McKENZIE, FRANCIS VIEIRA, JOHN KIMBERLING, and
others committed and caused to be committed the following overt
acts in the District of New Jersey and elsewhere:

#### *Illegal Commercial Flights Before Platinum Jet Commenced*
#### *Piggybacking on Darby Aviation's Part 135 Certificate*

a.   On or before November 27, 2002, defendant
MICHAEL BRASSINGTON solicited a commercial trip on Jet N60S from
St. Petersburg, Florida to Hyannis, Massachusetts, without a Part
135 certificate.

b.   On or before April 8, 2003, defendant PAUL
BRASSINGTON solicited a commercial trip on Jet N60S from
Teterboro, New Jersey to Athens, Georgia, without a Part 135
certificate.

c.   On or before May 9, 2003, co-conspirator Andre
Budhan solicited a commercial trip on Jet N60S from Teterboro,
New Jersey to Pontiac, Michigan, without a Part 135 certificate.

d.   On or before July 1, 2003, defendant PAUL
BRASSINGTON solicited a commercial trip on Jet N60S from
Teterboro, New Jersey to Hyannis, Massachusetts, without a Part
135 certificate.

e.  On or before July 28, 2003, co-conspirator Andre Budhan solicited a commercial trip on Jet N60S from Pontiac, Michigan to Teterboro, New Jersey, without a Part 135 certificate.

f.  On or before October 7, 2003, defendant PAUL BRASSINGTON solicited a commercial trip on Jet N60S from Teterboro, New Jersey to West Palm Beach, Florida, without a Part 135 certificate.

g.  On or before October 12, 2003, defendant PAUL BRASSINGTON solicited a commercial trip on Jet N60S from New Orleans, Louisiana to Atlanta, Georgia, without a Part 135 certificate.

h.  On or before November 13, 2003, defendant PAUL BRASSINGTON solicited a commercial trip on Jet N60S from Teterboro, New Jersey to Cleveland, Ohio, without a Part 135 certificate.

### *Flights Involving Falsified Flight Logs After Platinum Jet Commenced Piggybacking on Darby Aviation's Part 135 Certificate*

i.  On or about September 22, 2004, defendant MICHAEL BRASSINGTON caused to be prepared a flight log falsely representing that a commercial flight on Jet N60S from White Plains, New York to West Palm Beach, Florida, was operated under Part 91.

j.  On or about October 4, 2004, defendant MICHAEL BRASSINGTON caused to be prepared a flight log falsely

representing that a commercial flight on Jet N370V from Miami, Florida to West Palm Beach, Florida, was operated under Part 91.

k. On or about October 27, 2004, co-conspirator Joseph Singh instructed a first officer of Platinum Jet to falsify a flight log by representing that a commercial flight on Jet N370V from Teterboro, New Jersey to Orlando, Florida, was operated under Part 91, in order to conceal that first officer's violation of Part 135's rest time requirements.

l. On or about December 22, 2004, defendant FRANCIS VIEIRA caused to be prepared a flight log falsely representing that a commercial flight on Jet N370V from Wilmington, North Carolina to Teterboro, New Jersey, was operated under Part 91.

m. On or about January 20, 2005, defendant JOHN KIMBERLING caused to be prepared a flight log falsely representing that a commercial trip on Jet N370V from Windsor Locks, Connecticut to Coatesville, Pennsylvania, and from Coatesville to West Palm Beach, Florida, was operated under Part 91.

n. On or about January 23, 2005, defendant JOHN KIMBERLING caused to be prepared a flight log falsely representing that a commercial trip on Jet N370V from West Palm Beach, Florida to Coatesville, Pennsylvania, and from Coatesville to Windsor Locks, Connecticut, was operated under Part 91.

o.  On or about January 24, 2005, defendant JOHN KIMBERLING caused to be prepared a flight log falsely representing that a commercial trip on Jet N370V from Portsmouth, New Hampshire to Teterboro, New Jersey, was operated under Part 91.

p.  On or about January 27, 2005, defendant JOHN KIMBERLING caused to be prepared a flight log falsely representing that a commercial flight on Jet N370V from Boca Raton, Florida to Teterboro, New Jersey, was operated under Part 91.

q.  On or about January 30, 2005, defendant JOHN KIMBERLING caused to be prepared a flight log falsely representing that a commercial trip on Jet N260V from West Palm Beach, Florida, to Coatesville, Pennsylvania, and from Coatesville to Portsmouth, New Hampshire, was operated under Part 91.

r.  On or about February 22, 2005, defendant FRANCIS VIEIRA caused to be prepared a flight log falsely representing that a commercial flight on Jet N260V from Boca Raton, Florida to Morristown, New Jersey, was operated under Part 91.

### *Platinum Jet Flights Involving Unqualified Pilots*
### *After Platinum Jet Commenced Piggybacking*
### *on Darby Aviation's Part 135 Certificate*

s. On or before January 14, 2005, defendant
MICHAEL BRASSINGTON dispatched a captain, who was not qualified
under Part 135 to be flying commercial flights, to fly a
multiple-leg commercial trip on Jet N370V.

### *Platinum Jet Flights on Jet N60S*
### *Involving Falsified Weight-and-Balance Graphs*

t. On or about November 23, 2004, defendant
MICHAEL BRASSINGTON caused to be prepared a weight-and-balance
graph for a commercial flight on Jet N60S from Teterboro, New
Jersey, to Salina, Kansas, falsely representing the BOW of Jet
N60S to be approximately 1,000 pounds lighter than it actually
was, according to its weight-and-balance report and graphs,
thereby concealing the fact that the aircraft's COG was ahead of
its forward limit and that the aircraft was thus considered
unsafe to fly by its manufacturer and pursuant to Darby
Aviation's operations manual.

u. On or about November 26, 2004, defendant
MICHAEL BRASSINGTON caused to be prepared a weight-and-balance
graph for a commercial flight on Jet N60S from Dallas, Texas, to
Teterboro, New Jersey, falsely representing the BOW of Jet N60S
to be approximately 1,000 pounds lighter than it actually was,
according to its weight-and-balance report and graphs, thereby
concealing the fact that the aircraft's COG was ahead of its

forward limit and that the aircraft was thus considered unsafe to fly by its manufacturer and pursuant to Darby Aviation's operations manual.

v.   On or about November 28, 2004, defendant FRANCIS VIEIRA caused to be prepared a weight-and-balance graph for a commercial flight on Jet N60S from West Palm Beach, Florida to Teterboro, New Jersey, falsely representing the BOW of Jet N60S to be approximately 1,000 pounds lighter than it actually was, according to its weight-and-balance report and graphs.

w.   On or about December 5, 2004, defendant MICHAEL BRASSINGTON caused to be prepared a weight-and-balance graph for a commercial flight on Jet N60S from Aruba, to New Orleans, Louisiana, falsely representing the BOW of Jet N60S to be approximately 700 pounds lighter than it actually was, according to its weight-and-balance report and graphs, thereby concealing the fact that the aircraft's COG was ahead of its forward limit and that the aircraft was thus considered unsafe to fly by its manufacturer and pursuant to Darby Aviation's operations manual.

x.   On or about January 2, 2005, defendant MICHAEL BRASSINGTON caused to be prepared a weight-and-balance graph for a commercial flight on Jet N60S from Teterboro, New Jersey to Barbados, falsely representing the BOW of Jet N60S to be approximately 700 pounds lighter than it actually was, according to its weight-and-balance report and graphs, thereby concealing

the fact that the aircraft's COG was ahead of its forward limit
and that the aircraft was thus considered unsafe to fly by its
manufacturer and pursuant to Darby Aviation's operations manual.

### *Platinum Jet Flights on Jet N370V*
### *Involving Falsified Weight-and-Balance Graphs*

y.  In or about August 2004, defendant BRIAN
McKENZIE falsely represented to a captain of Platinum Jet that
Jet N370V had been re-weighed and that the new BOW of the
aircraft was approximately 1,000 pounds lower than the BOW
recorded in the Jet N370V Weight-and-Balance Report.

z.  On or about November 2, 2004, defendant
FRANCIS VIEIRA caused to be prepared a weight-and-balance graph
for a commercial flight on Jet N370V from Teterboro, New Jersey
to Phoenix, Arizona, falsely representing the BOW of Jet N370V to
be approximately 1,100 pounds lighter than it actually was,
according to the Jet N370V Weight-and-Balance Report and graphs,
thereby concealing the fact that the aircraft's COG was ahead of
its forward limit and that the aircraft was thus considered
unsafe to fly by its manufacturer and pursuant to Darby
Aviation's operations manual.

aa.  On or about November 12, 2004, defendant
FRANCIS VIEIRA caused to be prepared a weight-and-balance graph
for a commercial flight on Jet N370V from Teterboro, New Jersey
to Providenciales in the Turks and Caicos Islands, falsely
representing the BOW of Jet N370V to be approximately 1,000

- 21 -

pounds lighter than it actually was, according to the Jet N370V

Weight-and-Balance Report and graphs, thereby concealing the fact

that the aircraft's COG was ahead of its forward limit and that

the aircraft was thus considered unsafe to fly by its

manufacturer and pursuant to Darby Aviation's operations manual.

bb.   On or about November 15, 2004, defendant

FRANCIS VIEIRA caused to be prepared a weight-and-balance graph

for a commercial flight on Jet N370V from Providenciales in the

Turks and Caicos Islands to Wilmington, North Carolina, falsely

representing the BOW of Jet N370V to be approximately 900 pounds

lighter than it actually was, according to the Jet N370V Weight-

and-Balance Report and graphs, thereby concealing the fact that

the aircraft's COG was ahead of its forward limit and that the

aircraft was thus considered unsafe to fly by its manufacturer

and pursuant to Darby Aviation's operations manual.

cc.   On or about January 1, 2005, defendant

FRANCIS VIEIRA caused to be prepared a weight-and-balance graph

for a commercial flight on Jet N370V from Ft. Lauderdale, Florida

to St. Kitts, U.S. Virgin Islands, falsely representing the BOW

of Jet N370V to be approximately 1,000 pounds lighter than it

actually was, according to the Jet N370V Weight-and-Balance

Report and graphs, thereby concealing the fact that the

aircraft's COG was ahead of its forward limit and that the

aircraft was thus considered unsafe to fly by its manufacturer

and pursuant to Darby Aviation's operations manual.

- 22 -

dd.   On or about January 11, 2005, defendant
FRANCIS VIEIRA caused to be prepared a weight-and-balance graph
for a commercial flight on Jet N370V from Van Nuys, California to
Baton Rouge, Louisiana, falsely representing the BOW of Jet N370V
to be approximately 1,000 pounds lighter than it actually was,
according to the Jet N370V Weight-and-Balance Report and graphs,
thereby concealing the fact that the aircraft's COG was ahead of
its forward limit and that the aircraft was thus considered
unsafe to fly by its manufacturer and pursuant to Darby
Aviation's operations manual.

ee.   On or about January 25, 2005, defendant
FRANCIS VIEIRA caused to be prepared a weight-and-balance graph
for a commercial flight on Jet N370V from Teterboro, New Jersey
to Ft. Lauderdale, Florida, falsely representing the BOW of Jet
N370V to be approximately 1,000 pounds lighter than it actually
was, according to the Jet N370V Weight-and-Balance Report and
graphs, thereby concealing the fact that the aircraft's COG was
ahead of its forward limit and that the aircraft was thus
considered unsafe to fly by its manufacturer and pursuant to
Darby Aviation's operations manual.

ff.   On or about February 1, 2005, defendant
FRANCIS VIEIRA caused to be prepared a weight-and-balance graph
for a commercial flight on Jet N370V from Las Vegas, Nevada to
Teterboro, New Jersey, falsely representing the BOW of Jet N370V
to be approximately 1,000 pounds lighter than it actually was,

- 23 -

according to the Jet N370V Weight-and-Balance Report and graphs,
thereby concealing the fact that the aircraft's COG was ahead of
its forward limit and that the aircraft was thus considered
unsafe to fly by its manufacturer and pursuant to Darby
Aviation's operations manual.

All in violation of Title 18, United States Code,
Section 371.

<u>COUNTS TWO THROUGH TWENTY-TWO</u>
(False Statements)

1.   The allegations set forth in paragraphs 1 through 3 and 5 through 12 of Count One of this Indictment are re-alleged and incorporated herein.

2.   On or about the dates enumerated below as to each Count, in the District of New Jersey, and elsewhere, the listed defendants, in a matter within the jurisdiction of the FAA, a part of the Executive Branch of the United States, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, and did knowingly and willfully aid, abet, counsel, command, induce, and procure the commission of that offense as follows:

| Count | Date | Document | False Statement | Defendants |
|-------|------|----------|-----------------|------------|
| 2 | 11/1/04 | Flight Log:<br><br>Miami, FL<br><br>to<br><br>Teterboro, NJ | Commercial flight operated under Part 91 | MICHAEL BRASSINGTON<br><br>PAUL BRASSINGTON<br><br>FRANCIS VIEIRA |
| 3 | 12/13/04 | Flight Log:<br><br>Wilmington, NC<br><br>to<br><br>Morristown, NJ | Commercial flight operated under Part 91 | MICHAEL BRASSINGTON<br><br>PAUL BRASSINGTON<br><br>FRANCIS VIEIRA |

| 4 | 12/17/04 | Flight Log:<br><br>Teterboro, NJ<br><br>to<br><br>St. Maarten | Commercial flight operated under Part 91 | MICHAEL BRASSINGTON<br><br>PAUL BRASSINGTON |
|---|----------|----------------|-------------|----------------|
| 5 | 1/14/05 | Flight Log:<br><br>Teterboro, NJ<br><br>to<br><br>Atlanta, GA | Captain of Part 135 flight was Part 135-qualified | MICHAEL BRASSINGTON |
| 6 | 1/24/05 | Flight Log:<br><br>Portsmouth, NH<br><br>to<br><br>Teterboro, NJ | Commercial flight operated under Part 91 | MICHAEL BRASSINGTON<br><br>PAUL BRASSINGTON<br><br>JOHN KIMBERLING |
| 7 | 1/27/05 | Flight Log:<br><br>Boca Raton, FL<br><br>to<br><br>Teterboro, NJ | Commercial flight operated under Part 91 | MICHAEL BRASSINGTON<br><br>PAUL BRASSINGTON<br><br>JOHN KIMBERLING |
| 8 | 11/2/04 | Weight-and-Balance Graph:<br><br>Teterboro, NJ<br><br>to<br><br>Phoenix, AZ | Jet N370V BOW was about 24,500 pounds | MICHAEL BRASSINGTON<br><br>BRIAN McKENZIE<br><br>FRANCIS VIEIRA |

| 9 | 11/10/04 | Weight-and-Balance Graph:<br><br>West Palm Beach, FL<br><br>to<br><br>Teterboro, NJ | Jet N370V BOW was about 24,800 pounds | MICHAEL BRASSINGTON<br><br>BRIAN McKENZIE<br><br>FRANCIS VIEIRA |
|---|---|---|---|---|
| 10 | 11/12/04 | Weight-and-Balance Graph:<br><br>Teterboro, NJ<br><br>to<br><br>Turks and Caicos | Jet N370V BOW was about 24,700 pounds | MICHAEL BRASSINGTON<br><br>BRIAN McKENZIE<br><br>FRANCIS VIEIRA |
| 11 | 11/15/04 | Weight-and-Balance Graph:<br><br>Turks and Caicos<br><br>to<br><br>Wilmington, NC<br><br>to<br><br>Teterboro, NJ | Jet N370V BOW was about 24,800 pounds | MICHAEL BRASSINGTON<br><br>BRIAN McKENZIE<br><br>FRANCIS VIEIRA |
| 12 | 11/16/04 | Weight-and-Balance Graph:<br><br>Teterboro, NJ<br><br>to<br><br>Pontiac, MI | Jet N370V BOW was about 24,700 pounds | MICHAEL BRASSINGTON<br><br>BRIAN McKENZIE<br><br>FRANCIS VIEIRA |
| 13 | 11/17/04 | Weight-and-Balance Graph:<br><br>Minneapolis, MN<br><br>to<br><br>Teterboro, NJ | Jet N370V BOW was about 24,700 pounds | MICHAEL BRASSINGTON<br><br>BRIAN McKENZIE<br><br>FRANCIS VIEIRA |

| 14 | 11/23/04 | Weight-and-Balance Graph: Teterboro, NJ to Salina, KS | Jet N60S BOW was about 24,600 pounds | MICHAEL BRASSINGTON |
|----|----------|----|----|----|
| 15 | 11/26/04 | Weight-and-Balance Graph: Dallas, TX to Teterboro, NJ | Jet N60S BOW was about 24,700 pounds | MICHAEL BRASSINGTON |
| 16 | 11/28/04 | Weight-and-Balance Graph: West Palm Beach, FL to Teterboro, NJ | Jet N60S BOW was about 24,750 pounds | MICHAEL BRASSINGTON FRANCIS VIEIRA |
| 17 | 12/24/04 | Weight-and-Balance Graph: Teterboro, NJ to St. Kitts | Jet N370V BOW was about 24,700 pounds | MICHAEL BRASSINGTON BRIAN McKENZIE FRANCIS VIEIRA |
| 18 | 12/25/04 | Weight-and-Balance Graph: Morristown, NJ to Boca Raton, FL | Jet N370V BOW was about 24,700 pounds | MICHAEL BRASSINGTON BRIAN McKENZIE FRANCIS VIEIRA |

| 19 | 1/1/05 | Weight-and-Balance Graph:<br><br>Wilmington, NC<br><br>to<br><br>Teterboro, NJ | Jet N370V BOW was about 24,700 pounds | MICHAEL BRASSINGTON<br><br>BRIAN McKENZIE<br><br>FRANCIS VIEIRA |
| 20 | 1/2/05 | Weight-and-Balance Graph:<br><br>Teterboro, NJ<br><br>to<br><br>Barbados | Jet N60S BOW was about 25,000 pounds | MICHAEL BRASSINGTON |
| 21 | 1/25/05 | Weight-and-Balance Graph:<br><br>Teterboro, NJ<br><br>to<br><br>Ft. Lauderdale, FL | Jet N370V BOW was about 24,700 pounds | MICHAEL BRASSINGTON<br><br>BRIAN McKENZIE<br><br>FRANCIS VIEIRA |
| 22 | 2/1/05 | Weight-and-Balance Graph:<br><br>Las Vegas, NV<br><br>to<br><br>Teterboro, NJ | Jet N370V BOW was about 24,700 pounds | MICHAEL BRASSINGTON<br><br>BRIAN McKENZIE<br><br>FRANCIS VIEIRA |

All in violation of Title 18, United States Code, Section 1001 and Section 2.

## COUNT TWENTY-THREE
### (Endangering Safety of Aircraft)

1.     The allegations set forth in paragraphs 1 through 3 and 5 through 12 of Count One of this Indictment are re-alleged and incorporated herein.

2.     In or about November 2004, defendant MICHAEL BRASSINGTON represented to a first officer responsible for the fueling of Jet N370V and for preparing Jet N370V's weight-and-balance graphs (the "First Officer") that Jet N370V had been re-weighed and thereafter had a BOW approximately 1,000 pounds lighter than the BOW indicated on the weight-and-balance graphs on that aircraft.

3.     On or about February 2, 2005, prior to takeoff of a Platinum Jet commercial flight from Teterboro, New Jersey to Chicago, Illinois, the First Officer, in reliance on defendant MICHAEL BRASSINGTON's representations concerning the weight of Jet N370V, caused that aircraft to be over-fueled so that its COG exceeded its forward limit for takeoff.

4.     On or about February 2, 2005, Jet N370V crashed attempting to takeoff from Teterboro Airport.

     5.    From at least as early as in or around November 2004 until on or about February 2, 2005, in the District of New Jersey and elsewhere, defendant

MICHAEL BRASSINGTON

did knowingly and willfully communicate information, knowing the information to be false and under circumstances in which such information may have reasonably been believed, and did thereby endanger the safety of Jet N370V in flight.

     In violation of Title 18, United States Code, Section 32(a)(7) and Section 2.

## COUNT TWENTY-FOUR
### (False Statements)

1.   The allegations set forth in paragraphs 1 through 3 and 5 through 12 of Count One of this Indictment, and in paragraphs 2 through 4 of Count Twenty-Three of this Indictment, are re-alleged and incorporated herein.

## The National Transportation Safety Board

2.   At all times relevant to Count Twenty-Four of this Indictment:

a.   The National Transportation Safety Board ("NTSB") was an independent federal agency charged by Congress with investigating every civil aviation accident in the United States and issuing safety recommendations aimed at preventing future accidents.

b.   In the event of a civil aviation accident, NTSB deployed "go teams" of investigators to respond immediately to the scene of the accident.  These go teams investigated all aspects of the accident, including the accident scene, the crew's performance, mechanical issues, and the weather.

c.   At the conclusion of an investigation, NTSB issued a report containing factual findings, the probable cause of the accident, and safety recommendations.

3.   NTSB investigated the crash of Jet N370V at

Teterboro Airport on or about February 2, 2005 (the "Crash Flight") for purposes of making factual findings and drawing conclusions about the cause of the crash.

## Background of the Crash Flight

4. The Crash Flight was a Platinum Jet commercial flight booked through a charter broker.

5. The captain of the Crash Flight, defendant JOHN KIMBERLING, was not qualified under Part 135 to fly commercial flights.

6. Neither defendant JOHN KIMBERLING nor the first officer of the Crash Flight prepared a flight log or weight-and-balance graph prior to the attempted takeoff.

## The False Operator Aircraft Accident Report

7. On or about February 7, 2005, defendant MICHAEL BRASSINGTON submitted on behalf of Platinum Jet an Operator Aircraft Accident Report ("Accident Report") pursuant to the NTSB's investigation of the Crash Flight.

8. In the Accident Report, defendant MICHAEL BRASSINGTON represented that the Crash Flight was a Part 91 flight.

9.   On or about February 7, 2005, in the District of New Jersey, and elsewhere, defendants

MICHAEL BRASSINGTON,
PAUL BRASSINGTON, and
JOHN KIMBERLING,

in a matter within the jurisdiction of the NTSB, a part of the Executive Branch of the United States, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, namely, a representation in the Accident Report that the Crash Flight was operated under Part 91, when in fact they knew at the time that the Crash Flight was a commercial flight that should have been designated as a Part 135 flight.

In violation of Title 18, United States Code, Section 1001 and Section 2.

## COUNT TWENTY-FIVE
### (False Statements)

1.    The allegations set forth in paragraphs 1 through 3 and 5 through 12 of Count One of this Indictment, in paragraphs 2 through 4 of Count Twenty-Three of this Indictment, and in paragraphs 2 through 8 of Count Twenty-Four of this Indictment, are re-alleged and incorporated herein.

2.    On or about March 5, 2005, NTSB conducted a telephone interview of defendant FRANCIS VIEIRA in furtherance of its investigation of the Crash Flight.

3.    During the interview, NTSB representatives asked defendant FRANCIS VIEIRA why he had used a BOW of approximately 24,700 pounds on a weight-and-balance graph for a flight from Las Vegas, Nevada to Teterboro, New Jersey, on or about February 1, 2005 on Jet N370V, instead of the BOW of approximately 25,650 pounds pre-printed on that graph.

4.    In response to the question described in the preceding paragraph, defendant FRANCIS VIEIRA stated that he believed 24,700 pounds was the correct BOW, because Platinum Jet had told him this was the correct BOW.

5.    On or about March 5, 2005, in the District of New Jersey, and elsewhere, defendant

FRANCIS VIEIRA

in a matter within the jurisdiction of the NTSB, a part of the Executive Branch of the United States, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, namely, a representation to the NTSB during a telephone interview that he believed 24,700 pounds was the correct BOW of Jet N370V, because Platinum Jet had told him this was the correct BOW, when in fact he knew at the time he flew that flight that the BOW of Jet N370V was approximately 25,650 pounds.

In violation of Title 18, United States Code, Section 1001 and Section 2.

## COUNT TWENTY-SIX
(False Statements)

1.    The allegations set forth in paragraphs 1 through 3 and 5 through 12 of Count One of this Indictment, in paragraphs 2 through 4 of Count Twenty-Three of this Indictment, and in paragraphs 2 through 8 of Count Twenty-Four of this Indictment, are re-alleged and incorporated herein.

2.    On or about August 20, 2008, in Newark, New Jersey, the Department of Transportation, Office of the Inspector General ("DOT-OIG") conducted a telephone interview of defendant FRANCIS VIEIRA in furtherance of its investigation of Platinum Jet.

3.    During the interview, a DOT-OIG special agent asked defendant FRANCIS VIEIRA why he had used a BOW of approximately 24,700 pounds on weight-and-balance graphs for approximately 24 flights on Jet N370V instead of the BOW of approximately 25,650 pounds pre-printed on those graphs.

4.    In response to the questioning described in the preceding paragraph, defendant FRANCIS VIEIRA stated that he believed 24,700 pounds was the correct BOW of Jet N370V, because Platinum Jet had told him this was the correct BOW.

5.    On or about August 20, 2008, in Newark, in Essex County, in the District of New Jersey, and elsewhere, defendant

FRANCIS VIEIRA

in a matter within the jurisdiction of DOT-OIG, a part of the Executive Branch of the United States, did knowingly and

- 37 -

willfully make a materially false, fictitious, and fraudulent statement and representation, namely, a representation to a special agent with DOT-OIG during a telephone interview that he believed 24,700 pounds was the correct BOW of Jet N370V, because Platinum Jet had told him this was the correct BOW, when in fact he knew at the time he flew Jet N370V that the BOW of approximately 25,650 pounds pre-printed on that aircraft's weight-and-balance graphs was the correct BOW.

In violation of Title 18, United States Code, Section 1001 and Section 2.

## COUNT TWENTY-SEVEN
### (False Statements)

1.    The allegations set forth in paragraphs 1 through 3 and 5 through 12 of Count One of this Indictment, in paragraphs 2 through 4 of Count Twenty-Three of this Indictment, and in paragraphs 2 through 8 of Count Twenty-Four of this Indictment, are re-alleged and incorporated herein.

2.    On or about November 18, 2008, in Newark, in Essex County, in the District of New Jersey, and elsewhere, defendant

### JOHN KIMBERLING

in a matter within the jurisdiction of the DOT-OIG, a part of the Executive Branch of the United States, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, namely, a representation to a special agent with DOT-OIG during a telephone interview, that:

a.    he had seen on Jet N370V in or around January 2005 weight-and-balance graphs that had been manually altered to reflect a lower BOW than the BOW recorded in the Jet N370V Weight-and-Balance Report; and

b.    he had seen on Jet N370V approximately two weeks later a different, more recent weight-and-balance report that was on top of the Jet N370V Weight-and-Balance Report, the latter of which had been stricken with a line through it and marked "superceded," and that indicated a BOW for Jet N370V that was consistent with the manually altered BOW on the weight-and-

- 39 -

balance graphs on Jet N370V; when in fact Jet N370V had not been re-weighed since in or about September 2001, no document reflecting such a purported re-weighing existed, and the Jet N370V Weight-and-Balance Report was never stricken with a line through it and marked "superceded."

In violation of Title 18, United States Code, Section 1001 and Section 2.


A TRUE BILL

_____
PAUL J. FISHMAN
United States Attorney

CASE NUMBER: 09-45 (JAG)

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

MICHAEL BRASSINGTON,
PAUL BRASSINGTON,
BRIAN McKENZIE,
FRANCIS VIEIRA, and
JOHN KIMBERLING

# SUPERSEDING INDICTMENT FOR

18 U.S.C. § 371
18 U.S.C. § 1001
18 U.S.C. § 32
18 U.S.C. § 2

A True Bill,

_____
Foreperson

PAUL J. FISHMAN
*U.S. Attorney*
*Newark, New Jersey*

SCOTT B. McBRIDE
*Assistant U.S. Attorney*
*973-645-2708*